IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DARREN DIDERICKSEN,<br><br>Plaintiff,<br><br>vs.<br><br>CYPRUS CREDIT UNION, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:10-cv-211<br><br>Judge Clark Waddoups |

## INTRODUCTION

Defendant Cyprus Credit Union ("Cyprus") moves for Summary Judgment to dismiss Plaintiff Darren Didericksen's Fourth Amended Complaint with prejudice. (Dkt. No. 93). Didericksen filed a Cross Motion for Partial Summary Judgment. (Dkt. No. 100). The court heard oral argument on both parties' motions for summary judgment and on Cyprus' additional Motion to Strike Didericksen's Cross Motion for Partial Summary Judgment. (Dkt. No. 104). At the hearing, the court denied Cyprus's Motion to Strike. The court took the motions for summary judgment under advisement.

Counsel for both Didericksen and Cyprus stipulate that the only remaining issues to be resolved in Didericksen's Fourth Amended Complaint are the Eighteenth Claim for Conversion of the $100,000 in Didericksen's savings account, which Cyprus allegedly froze, and the Twenty-First Claim for Breach of Good Faith and Fair Dealing based on Cyprus's treatment of

the construction project and loan. Didericksen's Resp. and Cross Mot. for Sum. J. at 10 (Dkt. No. 99).

Accordingly, the court DENIES as moot and DISMISSES Didericksen's other claims against Cyprus, including the Tenth Claim for a Real Estate Settlement Procedures Act violation, the Eleventh Claim for a Truth in Lending Act violation, the Sixteenth Claim for Breach of Contract, the Nineteenth Claim for Fraudulent Inducement, and the Twentieth Claim for Unconscionability.

After carefully reviewing the parties' filings and relevant legal authorities, the court DENIES Cyprus's Motion for Summary Judgment and GRANTS IN PART and DENIES IN PART Didericksen's Cross Motion for Partial Summary Judgment on the Eighteenth Claim for Conversion and the Twenty-First Claim for Breach of Good Faith and Fair Dealing.

## FACTUAL BACKGROUND

Didericksen obtained a construction loan from Cyprus dated March 9, 2007 for up to $610,000 to construct a new single family residence (the "New House"). That same date, he executed a Construction Loan Agreement (the "Loan Agreement") and a Single Installment Fixed Rate Note (the "Construction Note") in the principal amount of $610,000 payable one year later on March 9, 2008. The Construction Note was secured by a Deed of Trust ("Construction Deed of Trust") to the New House and the underlying real property. All three documents are defined in the Loan Agreement as the "Loan Documents." The Loan Agreement includes the following provision:

> **Integration.** This agreement, the Note, and the Trust Deed should be construed together. A default under any one of the Loan Documents shall be deemed a default under all three. To the extent that the terms of this agreement conflict with the terms of

the Note or Trust Deed, the terms of this agreement shall prevail. The Loan Documents supersede all prior agreements, written or oral, of [Cyprus] and borrower.

(Dkt. No. 94, p. 35).

Later that same day, Didericksen signed an additional Trust Deed (the "Bountiful Home Trust Deed") to his existing home located at 2645 South Davis Boulevard, Bountiful, Utah (the "Bountiful Home"). That Trust Deed states its purpose is for security for "payment of the indebtedness evidenced by a promissory note of even date hereof in the principal sum of $100,000.00." (Dkt. No. 94, p. 53). No such note was ever executed. Cyprus did not loan Didericksen an additional $100,000 and did not modify or change the terms of the Loan Documents to be more favorable to Didericksen. The Bountiful Home Trust Deed does not include any terms for the interest rate, repayment date, or other material terms typically associated with a promise to repay money. Didericksen alleges that Cyprus coerced him to sign the Bountiful Home Trust Deed as a condition of advancing draws against the Loan Agreement.

Cyprus contends that the promissory note referenced in the Bountiful Home Trust Deed should be construed as the Construction Note, even though it is not included or referenced in the Loan Documents. Didericksen contends because no note evidencing a debt secured by the Bountiful Home Trust Deed was ever executed that Trust Deed is invalid.

By March 2008, the original maturity date of the Construction Note, Didericksen had drawn about $514,000 of the $610,000 available on the Construction Loan. In June 2008, Didericksen sold the Bountiful Home expecting to use the funds to complete construction of the New House. To remove the Bountiful Home Trust Deed and clear title for the Bountiful Home, Cyprus demanded and received a payoff of $100,000 from the transaction. Cyprus placed the money in a Didericksen account, but froze it, denying Didericksen access to use the funds to

complete the New House. Cyprus justified its actions by claiming that Didericksen was in default on the Construction Loan and that the $100,000 was being held to apply against it.

No express information was provided about whether the Construction Note was extended after the March 9, 2008 due date. Nevertheless, Cyprus continued to advance funds for the construction until October 2008. On October 14, 2008, Cyprus wrote Didericksen that his "construction loan will be coming due at the end of the month," advising him that he should be arranging long term financing, but that if he needed "more time to complete construction," an interest payment of $4,200 would need to be paid. (Dkt No. 94, p. 81). By that date, Didericksen had drawn additional funds so that the Construction Loan principal balance had increased to about $608,000. The $100,000 was still being held by Cyprus in a frozen account. Cyprus then refused to advance any further funds from the Construction Loan or release any of the $100,000 held in Didericksen's frozen account. At that point, Didericksen needed only about $30,000 more to complete construction of the New House.

Four months later, in February 2009, for reasons that are not explained, Cyprus finally agreed to release additional money and Didericksen was able to complete the home. He obtained an occupancy permit in May 2009. By that time, however, the real estate market had collapsed and Didericksen had incurred months of additional interest on the Construction Loan, all precluding him from obtaining permanent financing on the New House. Cyprus foreclosed on the New House in 2010.

Didericksen also alleges that, in addition to denying him access to the $100,000, Cyprus imposed a requirement that was not required when he secured the Construction Loan. Didericksen alleges that when he asked Cyprus for the first draw from the $610,000 Construction

Loan, Cyprus required the contractor, Horizon Masonry, Inc., to certify that the construction could be completed for $610,000. Fourth Am. Compl. ¶ 50 (Dkt. No. 53). This construction did not include a finished basement. Didericksen claims that before Cyprus would release the second draw on the Construction Loan, it added an additional term requiring Didericksen to certify that he would also finish the basement. *Id.* at 8, ¶ 51. Didericksen objected, telling Cyprus that the basement could not be finished within the $610,000 loan amount. He alleges that the plans submitted to the city, to Cyprus and to the brokers did not include a finished basement. *Id.* at 8, ¶ 52. Didericksen alleges that the additional requirement caused him additional delay and damages. Cyprus disputes these allegations.

Although the actual construction costs went over Didericksen's budget to $637,000, if the $100,000 frozen account had been credited against the Construction Loan, Didericksen would have been substantially under budget and the final loan amount at the end of construction would only have been $537,000. *Id.* at 10, ¶ 60. Didericksen acknowledges that the total time, from start to finish, of the Construction Loan was over two years, but alleges Cyprus delayed his being able to finish construction on the New House for almost one year by refusing to allow him to use the savings account funds. *Id.* at 10, ¶ 61. This delay caused Didericksen to incur excess interest and lost opportunity to either sell the property when the market was stronger or to refinance the Construction Loan into an affordable long term loan. *Id.*

Didericksen alleges that Cyprus's actions in denying him access to the $100,000 were a wrongful conversion of his funds. Fourth Am. Compl., 18th Cause of Action (Dkt. No. 53). He claims that denying him access, without his consent, caused him "to suffer actual damages due to insufficient funds to pay for the increased construction costs, avoidance of liens being placed on

5

property, clouding title and reducing the property's value, and an increase in construction time due to a lack of funds as well as credit and title damages resulting from foreclosure proceedings by [Cyprus] against [him]." *Id.* ¶ 271.

Didericksen further claims that Cyprus's actions were a breach of the implied covenant of good faith and fair dealing owed to him inherent in the Construction Loan Agreement. Fourth Am. Compl., 21st Cause of Action. (Dkt No. 53). He alleges that Cyprus's "conversion of [his] funds, breach of contract, fraud, and misrepresentation damaged [his] credit, equity, cash reserves, property value, and completion timeline." He further alleges: "In taking the above actions, [Cyprus] also purposely and successfully interfered in [his] ability to satisfy [his] obligations under the Loan Documents, in Breach of Common Law Principles of Good Faith and Fair Dealing." *Id.* ¶¶ 299-300.

Cyprus contends that Didericksen cannot prevail on his Conversion Claim because the promissory note referenced in the Bountiful Trust Deed should be understood to be the $610,000 Construction Loan Note and it had the right to control the $100,000 account as additional security for the Construction Loan. Cyprus further contends that Didericksen's claim for Breach of Good Faith and Fair Dealing must be dismissed because he has voluntarily dismissed his claim for breach of the Loan Agreement and a claim for breach of a covenant of good faith implied in the Loan Agreement cannot exist once the breach of contract claim has been dismissed.

## ANALYSIS

**I.     STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* A fact in dispute is "material" only if it might affect the outcome of the suit under governing law. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). The dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

**II.    CONVERSION**

"A conversion is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Lawrence v. Intermountain, Inc.*, 2010 UT App 313, ¶ 15 (quotations and citations omitted). "Although conversion results only from intentional conduct, it does not however require a conscious wrongdoing, but only an intent to exercise dominion or control over the goods

7

inconsistent with the owner's right." *State v. Twitchell*, 832 P.2d 866, 870 (Utah Ct. App. 1992) (quotations and citations omitted).

The undisputed material facts support Didericksen's claim that Cyprus wrongfully converted $100,000 of Didericksen's funds. Cyprus did not have lawful justification to deprive Didericksen of the use of the $100,000 received from the sale of the Bountiful Home. To lawfully exercise control over those funds, Cyprus must find that right within the Loan Documents. Nothing in the Loan Documents provides Cyprus the authority it claims. The Loan Agreement includes an "Integration" clause requiring that the Loan Agreement, the Construction Note and the New House Trust Deed be construed together. Nothing in the Loan Documents suggests nor allows an inference that there was an oral side agreement or a separate trust deed to be provided. On the face of the Loan Documents, they appear complete and legally obligate Cyprus to advance to Didericksen $610,000 to construct the New House. The loan was secured by the Trust Deed to the New House and Cyprus had the right, upon default, to look only to the New House as security. Nothing in the Loan Documents nor in the circumstances surrounding their execution suggest any ambiguity about the rights and obligations Cyprus owed to Didericksen in connection with the Construction Loan and there is no basis for the court to consider extrinsic evidence in construing the rights and obligations of the parties.

Any argument that Cyprus could look to the Bountiful Home as additional security for the Construction Loan is not only not supported by the Loan Documents, but is inconsistent with those documents. It is well supported in Utah law that any "interpretations argued for must be 'reasonably supported by the language of the contract.'" *Daines v. Vincent*, 2008 UT 51, ¶ 30, 190 P.3d 1269, 1277 (2008)(quoting *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268

(Utah 1995). Cyprus's claim that it had the right to exercise control over the funds from the sale of the Bountiful Home simply is not supportable from the Construction Loan Documents.

Similarly, Cyprus's argument that the Bountiful Home Trust Deed gave it the right to exercise control over the $100,000 must fail. First, the Bountiful Home Trust Deed is clear on its face. It provides: "This Deed of Trust, made this 9th day of March 2007, between Darren Didericksen, as TRUSTOR, whose address is 2645 S Blvd Bountiful, Utah 84010, Aspen Title, a Utah corporation, as TRUSTEE, and Cyprus Credit Union, as BENEFICIARY." At the bottom of the first page, under the heading of "For the Purpose of Securing," the Bountiful Home Trust Deed states that "payment of the indebtedness evidenced by a promissory note of even date hereof in the principal sum of $100,000, made by Trustor, payable to the order of Beneficiary at the times, in the manner and with interest, as herein set forth, . . . ." (Dkt. No. 94, p. 53). The trust deed makes no reference to the Construction Loan. Its only purpose was to secure a separate note in the principal sum of $100,000. It is undisputed that no such note was ever executed by Didericksen. It is also undisputed that Cyprus did not loan Didericksen an additional $100,000 and no terms were ever agreed upon to repay such an amount. Under the *Daines* injunction, Cyprus's argument cannot be reasonably supported by the express language of the instrument it relies upon. Any supposed oral or other extrinsic evidence cannot be offered to contradict the clear language of the agreement.

Second, the Bountiful Home Trust Deed cannot create a valid security interest for a note that never was executed. It expressly and clearly states that it secures a note for $100,000. Thus, the trust deed could be effective only upon the execution of such a note. That never happened. Moreover, even if the court were to consider that an obligation to repay should be inferred from

9

the language of the Bountiful Home Trust Deed that references the note, the document would fail for lack of consideration and have no legally enforceable effect. *See Watkins v. Ford*, 304 P.3d 841, 849 (Utah 2013) (quoting *Res. Mgmt. Co. v. Weston Ranch & Livestock Co.,* 706 P.2d 1028, 1036 (Utah 1985) ("For a promise to be legally enforceable, it must be supported by consideration")). Cyprus did not advance additional funds in the amount of $100,000. It was already obligated under the Construction Loan Documents to advance to Didericksen $610,000 to construct the New House. Cyprus gave no additional consideration to Didericksen to support its demand for additional security in the Bountiful Home. Cyprus' arguments fail on this ground alone.

Third, Cyprus's arguments fail because any supposed oral agreement to pledge the Bountiful Home as additional security for the Construction Loan lacks sufficient material terms to make it enforceable. *See, e.g., Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1376 (Utah 1995) (stating that both parties to a contract must assent to all material terms or their agreement is unenforceable); *Shoels v. Klebold*, 375 F.3d 1054, 1067 (10th Cir. 2004) (stating that when there is no meeting of the minds as to a material term of a contract, then there is no contract at all). There are no terms providing for repayment or an interest rate, most likely because the $100,000 was not to be advanced. More importantly, there were no terms setting forth the conditions upon which Cyprus could exercise any right to the additional security. Indeed, under the facts of this case, the lack of such terms allowed Cyprus to exercise control over the $100,000 without any clearly defined right to do so. Although the trust deed provides for rights upon default of the non-existent note, absent a note, a default could never occur. Any

attempt to read into the supposed oral agreement the rights specified in the Loan Documents is precluded by the integration language of those documents.

Finally, Cyprus' argument fails because it would violate the well-accepted principle that a trust deed is ineffective to secure a note that is separated from the security. *See, e.g., Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration System, Inc.,* 2011 UT App 232, ¶ 13, 263 P.3d 397, 403 ("The note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow"), *quoting Best Fertilizers of Ariz., Inc. v. Burns,* 117 Ariz. 178, 571 P.2d 675, 676 (Ariz. Ct. App. 1977), *rev'd on other grounds*, 116 Ariz. 492, 570 P.2d 179 (1977), and *citing* Restatement (Third) of Prop.: Mortgages § 5.4 cmt. A (1997)). Cyprus argues that the Bountiful Home Trust Deed was provided as security for the Construction Loan and the note it secures should be understood to be the Construction Note. That argument, if accepted, would require the court to conclude that the trust deed secures a note that is separate and apart from the note expressly identified in the Bountiful Home Trust Deed. Further, the Bountiful Home Trust Deed must, under Cyprus's argument, secure the Construction Note, which refers to a "Deed of Trust of even date." The referenced Deed of Trust can only be understood, under the Integration clause in the Construction Loan Agreement, to be the Construction Deed of Trust to the New House. Thus, even were Cyprus's argument accepted, the Bountiful Home Trust Deed would be ineffective and unenforceable.

For the reasons stated, the Bountiful Home Trust Deed did not, as a matter of law, provide Cyprus the right to exercise control over any proceeds from the sale of the Bountiful Home. Cyprus's demand for a payoff of $100,000 to remove the trust deed was without legal

right or justification. Cyprus's conduct in freezing Didericksen's account was a conversion of property to which Cyprus had no rights. Had Cyprus intended to require the Bountiful Home Trust Deed as additional security for the Construction Loan, it could have easily prepared the Loan documents to impose that requirement. Had Didericksen agreed by signing such documents, Cyprus could have, in good faith, enforced its right to the additional security. But Cyprus did not prepare documents to reflect such an agreement and Didericksen never signed documents giving Cyprus those rights. Thus, when Cyprus demanded and exercised control over the $100,000 in proceeds from the sale of the Bountiful Home, it wrongfully converted Didericksen's funds.

Thus, as a matter of law, the $100,000 was not susceptible to Cyprus's control. Cyprus deprived Didericksen of his possession and use of the funds when it froze the $100,000 in his account. Didericksen has provided evidence that, as a matter of law, Cyprus converted his funds. Accordingly, the court DENIES Cyprus' Motion for Summary Judgment and GRANTS Didericksen's Cross Motion for Summary Judgment on the Eighteenth Cause of Action for Conversion. The issue of the amount of damages Didericksen suffered caused by Cyprus' wrongful conversion remains in dispute and is an issue for trial.

### III. BREACH OF GOOD FAITH AND FAIR DEALING

"An implied covenant of good faith and fair dealing inheres in every contract. Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract." *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 47, 194 P.3d 956 (internal quotation marks omitted). "To comply with the covenant, a party must act consistently with the agreed common purpose

and the justified expectations of the other party." *Prince v. Bear River Mut. Ins. Co.,* 2002 UT, ¶ 27, 56 P.3d 524 (internal quotation marks omitted).

Further, "when one party to a contract retains power of sole discretion in an express contract, it must exercise that discretion reasonably and in good faith." *Cook v. Zions First Nat. Bank*, 919 P.2d 56, 60 (Utah Ct. App. 1996). The Utah Supreme Court has stated that the covenant of good faith and fair dealing is especially applicable where a party has a greater discretion to act. *See Eggett v. Wasatch Energy Corp.,* 2004 UT 28, ¶ 16, 94 P.3d 193 ("The more leeway a party has under the terms of the contract, the more contracting parties may invoke the protections of the covenant of good faith and fair dealing in the exercise of that discretion.").

Didericksen alleges as his Twenty-First Cause of Action that Cyprus' actions constitute a breach of good faith and fair dealing because Cyprus, as an institution that makes loans as its practice and profession, coerced Didericksen into certain actions with its superior position. *See* Fourth Am. Compl., ¶ 297 (Dkt. No. 53). Specifically, Didericksen alleges that Cyprus breached its duty of good faith and fair dealing by its wrongful conversion of the $100,000 and by imposing the requirement that he complete the basement of the New House within the original $610,000 Construction Loan amount, even though this was never contemplated when he first took out the Loan. Didericksen claims that these actions delayed construction of the New House for roughly eight months, causing damage and loss of value.

In taking the actions it did, Didericksen alleges that Cyprus also "purposely and successfully interfered in [his] ability to satisfy [his] obligations under the Loan Documents." *Id.*, ¶ 300. Didericksen asserts that Cyprus took these actions to "position itself to collect 'the highest legal rate allowed by law' which [Cyprus] knew in Utah was 'any rate of interest.'" *Id.*, ¶

13

301. Didericksen alleges that he was damaged by being "forced to remain in a contract with an unlimited rate of interest instead of refinancing into a normal [30]-year fixed mortgage" and is now in foreclosure. *Id.*, ¶ 302.

Cyprus contends that this claim must be dismissed because no such claim can exist when a breach of contract claim has been dismissed. Didericksen concedes dismissal of his cause of action for breach of the Construction Loan Agreement. Didericksen Opp. Memo. at 11 (Dkt. No. 99). Cyprus's argument is supported by some Utah law. *See e.g., Asael Farr & Sons Co. v. Truck Ins. Exch.*, 2008 UT App 315, ¶ 37. The Utah Supreme Court, however, clarified the law in 2011. In previous articulations of the law, the Court had stated that no new independent rights or duties could be created by an implied covenant. In clarifying the law, the Court said that if read literally, such an application would nullify all such claims. It therefore disavowed the "proscription against ever using the covenant to establish duties not expressly agreed to by the parties." *Young Living Essential Oils, LC v. Martin*, 2011 UT 64, ¶ 10 n.4.

Rather, the Court stated, the "new rights or duties" merely cannot be "inconsistent with express contractual terms." *Id.* Consequently, Cyprus' articulation of the law is imprecise. Where an express breach of contract claim has been dismissed, a claim for breach of an implied covenant of good faith and fair dealing may still survive if a defendant has acted without any contractual right to do so to deny the plaintiff the benefits intended by the contract. Thus, in this case, Cyprus may have fulfilled its express contractual duties under the Loan Agreement to advance construction funds, but nevertheless has engaged in conduct that, although not expressly addressed in the Loan Documents, prevented Didericksen from realizing the benefits of the Construction Loan and from meeting his obligation to repay the loan.

While Didericksen's claim may have been more clearly articulated and is not the model form of pleading, it is sufficient to put Cyprus on notice under the facts alleged in the Complaint and as supported in opposition to the Motion for Summary Judgment. Didericksen's pleadings, together with the proffered evidence to support the claim of a breach of the implied covenant of good faith and fair dealing, are sufficient to withstand summary judgment. The court has ruled that Cyprus wrongfully converted Didericksen's $100,000. Cyprus asserts it took that action to enforce its rights under the Loan Agreement. The express terms of the Loan Agreement, however, gave it no such rights and Didericksen has proffered evidence that Cyprus's conduct precluded him from realizing the benefits of the Loan Agreement and his ability to repay the Construction Loan. In addition, Didericksen contends that Cyprus imposed the added requirement that he finish the basement in the New House, causing additional cost and delay. There are, however, disputed issues of fact about the cause of the delay, the damage caused, and whether Cyprus imposed the additional requirement of finishing the basement. These disputes preclude summary judgment in Didericksen's favor on these issues. Nevertheless, Didericksen provides sufficient evidence to have these disputed issues resolved by a jury.

Accordingly, the court DENIES Cyprus' Motion for Summary Judgment and also DENIES Didericksen's Cross Motion for Summary Judgment on his claim for Breach of Good Faith and Fair Dealing.

## CONCLUSION

For the reasons set forth above, Defendant Cyprus Credit Union's Motion for Summary Judgment is DENIED and Plaintiff Darren Didericksen's Cross Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The court GRANTS the motion on his

Eighteenth Claim for Conversion and DENIES his motion on his Twenty-First Claim for Good Faith and Fair Dealing. (Dkt. Nos. 93, 100). Both parties stipulate and the court affirms that all other claims are DENIED as moot and are DISMISSED.

SO ORDERED this 15th day of November, 2013.

BY THE COURT:

*/s/ Clark Waddoups*

Clark Waddoups
United States District Judge